UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Aquatech Corporation, | Case No. 2:24-cv-00910-CDS-NJK |
| Plaintiff | **Order Granting Defendants' Motion to Set Aside Default and Denying Plaintiff's Motion for Default Judgment** |
| v. | |
| Liquid Pool Concepts, LLC and Jacob Hawkins, | [ECF Nos. 9, 11] |
| Defendants | |

Plaintiff Aquatech Corporation d/b/a United Aqua Group (UAG) seeks to recover against defendants Liquid Pool Concepts, LLC (LPC) and Jacob Hawkins. Compl., ECF No. 1. After the defendants failed to file an answer to the complaint, UAG moved for entry of clerk's default (ECF No. 7), which was entered (ECF No. 8). UAG now moves for default judgment. ECF No. 9.[1] In responding to the motion, the defendants move separately to have the default set aside. *See* ECF No. 10; ECF No. 11.[2] Because I find that there is good cause to set aside the default, I grant the defendants' motion and therefore deny UAG's motion.

**I.    Background[3]**

This case arises out of a contract dispute between UAG and LPC, "pursuant to which [UAG] granted LPC access to [UAG]'s member-only purchasing group in exchange for LPC's payment of Member Fees, Membership Dues, and regular and timely payment for purchased Products, along with all other obligations identified therein." ECF No. 1 at 2. In conjunction with the agreement, Hawkins "executed a Continuing Guaranty Agreement . . . in favor of [UAG], unconditionally guaranteeing the prompt payment and performance of LPC under the

---

[1] This motion is fully briefed. *See* Opp'n, ECF No. 10; Reply, ECF No. 19.
[2] This motion is fully briefed. *See* Opp'n, ECF No. 21; Reply, ECF No. 22.
[3] Unless otherwise noted, the court only cites to UAG's complaint (ECF No. 1) to provide context to this action, not to indicate a finding of fact.

Membership Agreement, and any other indebtedness or liability arising from the Membership Agreement." *Id.*

According to UAG, LPC purchased products under the agreement but refused to pay, breaching the contract and accruing damages calculated to be no less than $159,240.72 plus additional fees and costs. *Id.* at 5. The complaint was filed on May 14, 2024. *See* ECF No. 1. Summons were returned executed on LPC and Hawkins on June 17 and 20, 2024, respectively. ECF Nos. 5, 6. No answer was ever filed. UAG moved for entry of clerk's default on September 4, 2024. *See* ECF No. 7. Default was entered three weeks later. *See* ECF No. 8. UAG waited more than two months before filing the motion for default judgment. *See* ECF No. 9 (filed November 27, 2024). Defendants' response and subsequent motion was not filed until nearly a month after that, on December 20, 2024. *See* ECF Nos. 10, 11.

**II.    Legal standard**

Entry of default is appropriate as to any party against whom a judgment for affirmative relief is sought that has failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure and where that fact is made to appear by affidavit or otherwise. *See* Fed. R. Civ. P. 55(a). Rule 12 of the Federal Rules of Civil Procedure requires that "a defendant must serve an answer within 21 days after being served with the summons and complaint; or if it has timely waived service under Rule 4(d), within 60 days after the request for a waiver was sent." Fed. R. Civ. P. 12(a)(1)(A).

Once default has been entered against a defendant, the court may, "[f]or good cause shown . . . set aside an entry of default . . . ." Fed. R. Civ. P. 55(c). "The court's discretion is especially broad where, as here, it is entry of default that is being set aside, rather than default judgment." *O'Connor v. Nevada*, 27 F.3d 357, 364 (9th Cir. 1994) (quoting *Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945 (9th Cir. 1986)); *see also Brady v. United States*, 211 F.3d 499, 504 (9th Cir. 2000). Default is generally disfavored. *In re Hammer*, 940 F.2d 524, 525 (9th Cir. 1991); *Westchester Fire Ins. Co. v. Mendez*, 585 F.3d 1183, 1189 (9th Cir. 2009). Therefore, "'[w]here timely relief is

sought from a default . . . and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the [default] so that cases may be decided on their merits.'" *Mendoza*, 783 F.2d at 945–46 (quoting *Schwab v. Bullock's, Inc.*, 508 F.2d 353, 355 (9th Cir. 1974) (internal quotations and citation omitted)).

To determine whether a party has shown good cause, the court must examine "(1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; [and] (3) whether reopening the default judgment would prejudice any other party." *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) [hereinafter "*Mesle*"] (quoting *Franchise Holding II, LLC v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 925–26 (9th Cir. 2004)) (quotation marks omitted); *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (adopting the three-factor test for the first time in the Ninth Circuit). When performing this analysis, the court must remember that "judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Mesle*, 615 F.3d at 1091 (quoting *Falk*, 739 F.2d at 463) (quotation marks omitted).

## III. Discussion

### A. Culpable conduct

The court will consider a party's conduct culpable if it "has received actual or constructive notice of the filing of the action and intentionally failed to answer." *Mesle*, 615 F.3d at 1092 (citations and quotation marks omitted). In this context, "intentionally" means that the party "must have acted with bad faith, such as an intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process." *Id.* (citation and quotation marks omitted); *see also TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 698 (9th Cir. 2001). "Neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision-making, or otherwise manipulate the legal process is not 'intentional' under our

default cases, and is therefore not *necessarily*—although it certainly may be, once the equitable factors are considered—culpable or inexcusable." *TCI Group*, 244 F.3d at 697–98 (emphasis in original).[4]

      Defendants acknowledge that they did not answer the complaint on purpose but explain that their doing so was not the result of bad faith or any other improper purpose. ECF No. 11 at 9. Hawkins explains in his declaration that negotiations were ongoing at the time the complaint was filed, and the defendants figured that—based on UAG's representations during those negotiations—the dispute could be resolved in good faith without needing to proceed with the lawsuit. *Id.* (citing Hawkins decl., ECF No. 11-1 at 3–4). In response, UAG points to Ninth Circuit case law suggesting that purposeful failure to respond, regardless of intention, can be presumed to constitute "intentional" failure and therefore culpable conduct. ECF No. 21 at 4 (citing *GemCap Lending I, LLC v. Pertl*, 843 F. App'x 986, 987 (9th Cir. 2021) (holding that district court did not err in finding that a defendant aware of the complaint who even sought an extension to answer but ultimately failed to do so in time acted intentionally and therefore culpably).

      First, I note that the defendants took seven months between receiving the complaint and filing this motion. This weighs against their argument that this was not intentional. Without further explanation, such behavior could be sufficient grounds to find that not only did they engage in culpable conduct, but this culpable conduct could result in a refusal to set aside a default. Here, good faith negotiations do not absolve a defendant from answering, but they also do not point directly to bad faith conduct. On August 5, Joseph Sweeney of Panda Law, the defendants' original counsel, acknowledged receipt of the complaint. Emails, ECF No. 11-3 at 8;

---

[4] Defendants purport to quote from *TCI Group*: "If a defendant 'neglectfully fails to answer, yet offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decision making, or otherwise manipulate the legal process[,]' he or she is not necessarily culpable. *TCI Group*, 244 F.3d at 697–98." ECF No. 11 at 9. This language, as quoted, cannot be found in the case. This is, presumably, a case of simply placing the quotation mark in the wrong place, or perhaps a consequence of copying from a summary to draft the motion. Regardless of the situation, defendants are cautioned that making up case quotations is treacherous territory that can result in sanctions.

*see also* ECF No. 11-3 at 11 (acknowledging that Joseph Sweeney at Panda Law represented defendants). He stated repeatedly in his emails that he was requesting information for the purpose of settlement. *Id.* at 11 ("We reflect a current balance of $159,240.72. When free, could you or one of your representatives call or email me so we may discuss resolving the balance."); *id.* at 8 ("Could you please advise on when you will be able to send across the requested documents as we would like to proceed with settling the account."). In the emails, Sweeney is informed several times by UAG's attorney that the litigation **would not** be halted for the settlement to occur. *Id.* at 4 ("As I have previously stated, my client will continue to pursue its rights under the agreement."); *id.* at 3–4 ("At this point, my client is reserving all rights and will move forward with seeking judgment for the total amount owed."). However, the emails also demonstrate that even as late as November 2024, the parties were still negotiating. *Id.* at 3 ("If your client is interested in making an offer, I will take it to my client."). Failing to answer the complaint was at least negligent, but I find that the defendants' knowledge and repeated reminders of the existence of the lawsuit also lend themselves to some level of culpability.

However, I do not find that the present circumstances were particularly egregious, and although bad faith can be presumed from a knowing failure to answer, *see GemCap Lending*, 843 F. App'x at 987, I do not find that defendants exhibited bad faith here. Thus, while I do find that the defendants bear some culpability in their failure to respond, I delay deciding on this factor's weight until conducting a fulsome examination of the other factors.

**B. Meritorious defense**

"A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense. But the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *Mesle*, 615 F.3d at 1094 (citing *TCI Group*, 244 F.3d at 700). All that is necessary to satisfy the "meritorious defense" requirement is to allege sufficient facts that, if true, would constitute a defense: "the question whether the factual allegation [i]s true" is not to

be determined by the court when it decides the motion to set aside the default. Id. Rather, that question "would be the subject of the later litigation." *Id.*

Defendants here raise numerous defenses against UAG. First, they point to a hardship defense, arguing that performance of the contract would be extremely costly or onerous although not literally impossible. ECF No. 11 at 11.[5] They point to their allegations that UAG's system failure meant that the defendants were unable to pay UAG for seventeen months, leaving the defendants unable to catch up once UAG could accept payment again. *Id.* They assert that although they "do not seek to escape the ultimate amount owed, Defendants believe their inability to pay warrants against the exorbitant finance charges that UAG seeks . . . ." *Id.* Second, the defendants plan to present an accord and satisfaction defense, having "presented evidence that they owed amounts under the contract, negotiated a reduction with UAG, continued to work with UAG on payments and a set amount owed, with the intent to perform and pay all amounts eventually agreed upon by the parties." *Id.* at 11–12.

In response, UAG argues first that although the defendants claim to have made "several attempts to contact UAG both through email and over the phone to discuss the issues with the payment portal and/or make a payment over the phone," they have yet to produce any evidence to that effect. ECF No. 21 at 6 (quoting Hawkins decl., ECF No. 11-1 at 3). UAG also states that in addition to the agreement itself, UAG provided clear invoices and explained in a 2023 email exchange that the contested "$30,825.51 is a late fee/finance charge for the overdue amounts[,]" so the defendants cannot in good faith raise an argument that the amount they owe is in dispute. *Id.* at 7–8.

---

[5] Defendants lift an entire paragraph—block quote and all—from *Taylor-Edwards Warehouse & Transfer Co., of Spokane v. Burlington N., Inc.*, 715 F.2d 1330, 1336 (9th Cir. 1983), without even citation, let alone proper quotation. If anything, this is more confusing than anything else. Defendants' briefing leaves the wrong impression that the last legal authority on the matter was a 1946 Ninth Circuit case (*Kiyoichi Fujikawa v. Sunrise Soda Water Works Co.*, 158 F.2d 490, 493 (9th Cir. 1946)) that, if applicable today, would foreclose the defendants' hardship argument entirely.

"The defendant's burden is minimal." *Mesle*, 615 F.3d at 1094. Here, although UAG raises major questions about the defendants' purported defenses, the defendants have satisfied the requirement that they present a meritorious defense. Defendants allege that they were unable to pay UAG for months on end because of a UAG payment receipt issue. Hawkins decl., ECF No. 11-1 at 2–3. This, combined with the allegation that UAG was unresponsive to repeated contact attempts, is sufficient to lay the groundwork for a hardship defense.[6] Although the defendants do not provide documentary evidence to support this claim, the plaintiffs' demands are more in line with a summary judgment evidentiary inquiry than the loose requirement here to allege sufficient facts that, if true, could support the defense. For the same reasons, the accord and satisfaction defense has been sufficiently pled. Thus, this factor weighs in favor of setting aside the entry of default.

### C. Prejudice to UAG

To be prejudicial, the setting aside of a judgment must hinder a plaintiff's ability to pursue his or her claim. *TCI Group*, 244 F.3d at 701. That is, the delay caused to a plaintiff as a result of pursuing the default judgment "must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Id.* (quoting *Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 433–34 (6th Cir. 1996)).

Defendants argue that because the default judgment application was only just filed, there is no real prejudice to UAG. ECF No. 11 at 10. Additionally, they assert that the payment under the contract is not in dispute, "only a collateral aspect of the overall amount – the finance charges and likely the attorneys' fees owed[,]" remains to be decided. *Id.* In response, UAG argues that the prejudice comes in the form of legal fees it has accrued working with the

---

[6] "Under [ ] common law, a hardship defense to the contractual obligation to perform is recognized only if the difficulty rises to the level of 'impossibility.'" *Taylor-Edwards Warehouse*, 715 F.2d at 1336 (citing 18 *Williston on Contracts* § 1963, at 182 (3d ed. 1978), and 6 *Corbin on Contracts* § 1320, at 322 (1962 ed.)). "More modern cases dealing with the issue have exhibited a trend away from the harshest application of this doctrine, to allow a defense where performance would be extremely costly or onerous although not literally impossible." *Id.* (citing 18 *Williston* § 1963, at 178, and 6 *Corbin* § 1320, at 321–22).

defendants' counsel and filing the motions for default, which is distinguishable from the typical costs of litigation.

UAG's complaints about the litigation costs to this point are valid, though I do not find that these constitute prejudice; such complaints are better suited for a motion for sanctions or attorney's fees, though such a motion is not currently before me. Thus, I find that this factor weighs in favor of setting aside the entry of default.

Because I find that (1) UAG would not be prejudiced by setting aside the entry of default and (2) defendants have asserted meritorious defenses, I conclude my analysis by revisiting the defendants' culpability. Although I find that the defendants are at least somewhat culpable, because I do not find that their actions evidenced bad faith, and because the other two factors weigh in favor of setting aside the entry of default, I find that the defendants have demonstrated enough for default to be set aside.[7]

## IV.    Conclusion

IT IS HEREBY ORDERED that defendants' motion to set aside entry of default **[ECF No. 11] is GRANTED**. The Clerk of Court is kindly instructed to set aside default **[ECF No. 8]** against the defendants. Defendants must answer or otherwise respond to the complaint by August 4, 2025.

IT IS FURTHER ORDERED that UAG's motion for default judgment **[ECF No. 9] is DENIED.**

Dated: July 21, 2025

_____
Cristina D. Silva
United States District Judge

---

[7] Therefore, necessarily, UAG's application for default judgment must be denied.